## In re WENDY'S FOOD SYSTEMS, INC., Debtor.

### Bankruptcy No. 2–87–03759.

United States Bankruptcy Court, S.D. Ohio, E.D.

Jan. 22, 1988.

Leonard A. Carlson, Smith & Schnacke, Columbus, Ohio, for Lincoln Nat. Life Ins. Co.

E. James Hopple, Schottenstein, Zox & Dunn, Columbus, Ohio, for debtor.

Nick Cavalieri, Arter & Hadden, Columbus, Ohio, for Creditors' Committee.

Frederick Reed, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for Wendy's Intern., Inc.

## ORDER ON DEBTOR'S MOTION FOR VALUATION OF SECURED CLAIM

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a motion filed by the debtor, Wendy's Food Systems, Inc., asking the Court to value a portion of the secured claim of Lincoln National Life Insurance Company for its own account and as agent for Continental Assurance Company, an investment fund, Minneapolis Teachers Retirement Fund Association, the West American Insurance Company, and Franklin Capital Corporation ("the Lenders"). The legal issues were briefed by the parties and evidence was presented to the Court.

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (M) and (O).

### FINDINGS OF FACTS

The Court finds the following facts:

1. Wendy's Food Systems, Inc. is the debtor in a Chapter 11 case pending in this Court.

2. The debtor is the operator, as a franchisee, of approximately 84 Wendy's Old Fashioned Hamburger restaurants in northeastern Ohio and northwestern New York.

3. As part of its reorganization, the debtor proposes to sell nine of its restaurant locations in the Youngstown, Ohio area.

4. The Lenders have perfected security interests in certain equipment, furnishings and fixtures owned by the debtor and used in six of the nine restaurants proposed to be sold.

5. The sale contract entered into between the debtor and LTP, Inc., the potential purchaser of the nine restaurants, does not allocate any specific value to the Lenders' collateral.

6. The only cash proceeds to be received by the debtor from the proposed sale represent the value of existing inventory (food and paper supplies) on a cost basis and cash in the registers of the stores being sold.

7. Other consideration for the contract of sale arises from LTP, Inc.'s assumption of certain past due obligations. Those obligations relate to leases for the real property and leasehold improvements at the various store locations, leases for certain isolated pieces of equipment in the stores and agreements for franchise and advertising fees owed to the franchisor, Wendy's International, Inc., up to a stated maximum of $25,000 for each restaurant location.

8. The Lenders and the debtor have agreed that the going concern value of the Lenders' collateral in the stores to be sold is $9,500 for each of five of the stores and $11,000 for the sixth store, for a total of $58,500.

9. The Lenders and the debtor have agreed, and the testimony establishes, that the liquidation value of the Lenders' collateral in the stores to be sold is $1,928 for each of five of the stores and $2,450 for the sixth store for a total of $12,090.

10. The debt assumptions, many of which are subject to forgiveness arrangements with the various creditors, decrease the obligations of the debtor's bankruptcy estate. The value of such decrease to the other creditors of the estate or the debtor cannot be known, however, until a projected dividend for unsecured claims is proposed in a plan of reorganization and the distribution which would be required for such claims, had the buyer not assumed those liabilities, can be established. To the extent principals of the debtor have guaranteed the obligations being assumed, a direct benefit to those individuals could be calculated.

### ISSUE OF LAW

The issue before the Court is the standard to be used to value the secured claim of the Lenders as such claim relates to collateral in the stores to be sold. The proposed disposition and use of the property is by actual sale to an entity which will operate as a successor franchisee of stores currently not showing profitability, where the contract of sale allocates no specific value to the collateral, and where no proceeds are to be received which can be attributed directly to the value of the collateral. As might be expected, the debtor argues for the application of the valuation standard characterized as "liquidation value" and the Lenders argue for application of the valuation standard characterized as "going concern" value.

### CONCLUSIONS OF LAW

Various standards have been set forth as appropriate for the valuing of a secured claim in a case under Chapter 11 of the Bankruptcy Code. Such standards include:

"(1) Retail Value—The value at which the collateral can be sold to its ultimate user ...

(2) Wholesale Value—The value for purposes of resale to someone who deals in property of that kind. This is the value obtainable at a commercially reasonable private foreclosure sale to a dealer. It is also the approximate value obtainable through a commercially reasonable public auction. ...

(3) Forced Sale Value—The value obtainable through speedy sale, either public or private without the type of advertising and sales effort that would normally accompany an attempt to obtain the maximum price ... This standard is occasionally called "quick liquidation" value.

(4) Going Concern Value—The value, sometimes referred to as "enterprise

value," obtainable when all the essential operating assets of a business are sold as an entity so that the purchaser is able to project a profit from the operation of these assets. Here value is usually based not upon asset values as such but rather upon the ability of the entire mix to turn a profit. Value is accordingly calculated by applying a multiple to the projected profit. What portions of this value are attributable to which specific assets (including good will) depends entirely upon the method of allocation, which is largely controlled by seller and buyer.

(5) Reorganization Value—This standard of value was developed by the courts under the reorganization sections of the former Bankruptcy Act as a method of valuing a business in reorganization ... [for purposes] of the rule of absolute priority ... it is different from going concern value in actual practice by reason of its relative emphasis upon future developments ...

(6) A Combination of Two or More of the Foregoing ... because of the particular circumstances of the case." Queenan, *Standards for Valuation of Security Interests in Chapter 11*, 92 Com.L.J. 18, 20 (1987).

The standards quoted above have been applied by the courts in varying ways depending both upon the circumstances of a given case and, as required by 11 U.S.C. § 506(a), upon the purpose for the valuation and the proposed use or disposition of the property. In this case the debtor and the Lenders agree upon the values to be ascribed to the Lenders' collateral on a forced sale/liquidation basis or a going concern/in-place basis. The Court has been requested only to select the applicable standard.

In this instance the agreed-upon going concern value (more appropriately characterized as "in-place" value) is approximately five times the agreed-upon liquidation value. In the context of the particular sale contemplated, with the conceded lack of profitability of the particular restaurant franchises being sold, the somewhat depressed prospects for the business of which these restaurants are a part, and the appraiser's disregard of any application of a capitalization of earnings approach, the Court doubts the accuracy of the amount agreed upon as going concern/in-place value. It appears possible that this may be one instance where liquidation and in-place value are much closer than is usually the case. However, as the Court was not asked to find the value, but only to determine the appropriate standard, the Court adopts the values agreed upon between the parties.

Based upon the foregoing, the Court finds that where an actual sale is contemplated, despite the failure of the parties to allocate any part of the sale consideration to the value of specific liened assets, going concern or in-place value is the appropriate standard to be applied. Accordingly, the value of the Lenders' secured claim, to the extent such claim is secured in the debtor's equipment, furnishings and fixtures in six of the franchise locations in Youngstown, Ohio which are proposed to be sold to LTP, Inc., is determined to be $58,500.

IT IS SO ORDERED.